**SHATTERPROOF GLASS CORPORATION, Appellee/Cross-Appellant,**

v.

**LIBBEY–OWENS FORD COMPANY and Leybold-Heraeus GmbH, Appellants/Cross-Appellees.**

**Appeal Nos. 84–853, 84–883.**

United States Court of Appeals, Federal Circuit.

March 29, 1985.

614

John E. Lynch, Felfe & Lynch, New York City (argued), Richmond I. McKay,

Commercial Litigation Branch, Dept. of Justice, Washington, D.C., was on brief, for appellants/cross-appellees; Alfred H. Hemingway, Jr. of Felfe & Lynch, New York City, of counsel.

William J. Schramm, Mount Clements, Mich. (argued), John B. Tacke, Hudson, Creyke, Koehler & Tacke, Washington, D.C., was on brief, for appellee/cross-appellant; John E. Nemazi, Mount Clements, Mich., William W. Thompson, Jr., Washington, D.C., of counsel.

Before SMITH, Circuit Judge, COWEN, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Libbey-Owens Ford Company and Leybold-Heraeus GmbH appeal from denials of their motions for judgment notwithstanding the verdict (n.o.v.) and for a new trial, and from other rulings related to the issue. The United States District Court for the Eastern District of North Carolina, Judge W. Earl Britt presiding, entered judgment in favor of Shatterproof Glass Corporation on jury verdicts that claims 1, 8, 10, and 11 of U.S. Patent No. 3,904,506 (the Apparatus patent) and claims 1, 3, 4, and 8 of U.S. Patent No. 3,925,182 (the Method patent) are valid and are infringed by operation of a Libbey-Owens Ford manufacturing plant located in Clinton, North Carolina. The jury also found that Leybold-Heraeus' provision of equipment to that plant constituted inducement to infringe or contributory infringement of the claims. The jury assessed damages in the amount of $2,826,-793, and upon motion the court granted Shatterproof $464,000 in prejudgment interest. The court denied Shatterproof's request for injunction and granted Libbey-Owens Ford a compulsory license to permit future practice under the Apparatus and Method patents at a royalty rate of 5%, from which rate appellants appeal.

Shatterproof cross-appeals from the denial of its requests for treble damages and for attorney fees.

## Background

The patents at issue relate to "sputter coating" of glass sheets. The technique of sputter coating has long been known in scientific principle: in essence, a solid piece of metal which will form the coating serves as cathode in a vacuum chamber containing the substrate to be coated; an inert gas such as argon is ionized in the chamber, whereby it bombards the metal cathode and knocks off charged metal atoms which deposit to form a film on the substrate.

The two patents in suit describe and claim a multi-step method and apparatus which, according to the record, provided a commercially feasible way of continuously coating large glass sheets such as architectural panels, to form a uniform metallic film of controlled thickness, free of unacceptable defects such as pinholes and irregularities.

Not all of the patent claims were asserted in this action. Of asserted Apparatus patent claims 1, 8, 10, and 11, claim 11 describes some of the multiple components, with respect particularly to the coating chamber:

11. Apparatus for continuous production of sputter-coated glass sheets and the like, which comprises:

a. a coating chamber having entry and exit openings,

b. a platen having a horizontal upper surface for supporting a sheet to be coated in a horizontal position,

c. conveyor means for supporting the platen and sheet in a horizontally disposed position and for passing them into the coating chamber through the entry opening and discharging them through the exit opening,

d. means for sealing the entry and exit openings of the coating chamber when the platen and sheet are supported therein,

e. means connected to the coating chamber for controlling the pressure therein,

f. sputter-coating means mounted in the upper portion of said chamber for depositing a continuous film of a selected coating material on the upper surface of the sheet as it moves through said chamber, and

g. means actuated in response to movement of the platen for selectively opening and then closing the means for sealing the entry and exit openings of the coating chamber.

Apparatus patent claims 1, 8, and 10 variously include additional components, such as entrance and discharge chambers in line with the coating chamber and independent control means for the chambers; means to maintain an inert gas atmosphere in the coating chamber; sealing means at the entry and exit ends of the entrance and discharge chambers with means to open and close in timed relation to the platen movement; heating means and glow discharge means in the coating chamber; control means responsive to platen movement through the coating chamber; a rectangular cathode to which a sheet of coating material is secured; and means for circulating a coolant through a chamber provided for the cathode.

Method patent claims 1, 3, 4, and 8 were asserted. The broadest of these is claim 1:

1. A method for the production of sputter-coated glass sheets which comprises:

a. freely supporting a glass sheet to be coated in a horizontal position on the upper substantially continuous surface of a support platen,

b. freely supporting said platen and glass sheet horizontally upon a conveyor means,

c. conveying the platen and sheet horizontally into a coating chamber,

d. maintaining a predetermined pressure in said coating chamber,

e. sputter-coating a continuous film of a selected coating material on the upper surface of said sheet when supported in the coating chamber, and

f. removing the platen and coated sheet from said chamber.

Method claims 3, 4, and 8 further describe, *inter alia*, sputter-coating with a plurality

of cathodes connected to individual power sources and with the power levels independently controlled by movement of the platen; the use of three successive chambers; sealing the coating chamber from adjacent chambers; maintaining an inert gas atmosphere; sputter coating the glass sheet while it is moving; and using movement of the platen to establish communication between the coating chamber and adjacent chambers while maintaining the pressure in the coating chamber.

Both patents were based on a common application filed on September 25, 1973, which was a continuation-in-part of an application filed on November 13, 1972, which continued an application filed on September 8, 1970. The three named inventors, D.C. Carmichael, D.L. Chambers, and C.T. Wan, were employees of Battelle Memorial Institute, a contract research institute retained by Shatterproof, a glass manufacturer, for the purpose of developing a process for coating glass with thin metallic films.

Shatterproof sued Libbey-Owens Ford on November 17, 1981, alleging infringement of the Apparatus and Method patents at the plant in Clinton, North Carolina (the Clinton Coater). Shatterproof later amended its complaint to include Leybold-Heraeus GmbH (LH) and Leybold-Heraeus Vacuum Systems, Inc. (LHVS) as defendants; the amended complaint was eventually dismissed as to LHVS. (We shall refer to the appellants collectively as LOF, except when necessary to distinguish between them.) Both sides requested a jury trial.

The complaint was further amended, by stipulation, to add the count of infringement of Shatterproof's U.S. Patent No. 3,826,728 (the Coating patent). Before trial, after a series of motions and orders, the district court granted Shatterproof's motion to dismiss with prejudice as to the Coating patent. LOF agreed to the dismissal, and now requests attorney fees with respect to the Coating patent.

The jury trial occupied three weeks. The jury returned verdicts that each of the asserted claims of the Method and Apparatus patents were valid and infringed and awarded Shatterproof $2,826,793 in damages.

## Issues

1. Whether the district court erred in denying LOF's motion for judgment notwithstanding the verdict.

2. Whether the district court abused its discretion in denying LOF's motion for a new trial.

3. Whether the district court erred in denying LOF's motions concerning the amount of damages and the license royalty.

4. Whether the district court abused its discretion in denying Shatterproof's requests for treble damages and attorney fees, and in denying LOF's request for attorney fees relating to the Coating patent.

## Patent Validity

LOF challenges the jury's holding that the claims in suit of the Apparatus and Method patents are valid, and argues on appeal that both patents are invalid under 35 U.S.C. § 102 and § 103; that both patents are invalid due to violation of the "on sale" provision of 35 U.S.C. § 102(b); that both patents are invalid for failure to name the correct inventors; and that both patents are invalid for claim indefiniteness in violation of 35 U.S.C. § 112. Errors are assigned to the jury instructions and to the trial judge's management of pre-trial and trial procedures, pertinent to the asserted invalidity of the patents.

■ In deciding a duly filed motion for judgment n.o.v. upon a jury's determination that a patent is valid (i.e. has not been proven invalid), the district court must determine, without substituting its views for those of the jury when resolving conflicts in the evidence, whether in light of the evidence reasonable persons could have found the facts necessary to support the jury's verdict, or whether the facts properly found can in law support the verdict. *Weinar v. Rollform Inc.*, 744 F.2d 797, 805, 223 USPQ 369, 373 (Fed.Cir.1984).

In reviewing a decision denying a motion for judgment n.o.v. we do not approach the issues as if there had been no trial. We review the evidence as a whole, and ascertain whether the verdict is in accordance with law, and whether there was substantial evidence in support of the jury's verdict. In the case at bar there was conflicting testimony and argument on essentially all material facts, and due deference must be given to the opportunity of jury and trial judge to have observed the witnesses and viewed the exhibits over a lengthy trial. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1513, 220 USPQ 929, 936 (Fed.Cir.), *cert. denied,* ─── U.S. ───, 105 S.Ct. 220, 83 L.Ed.2d 150, 224 USPQ 520 (1984).

## A. Anticipation.

Anticipation under 35 U.S.C. § 102 requires that there be an identity of invention, which presents a question of fact for the jury. LOF produced some twenty-one references at trial in support of invalidity due to anticipation or obviousness, and concentrates on eight of these on this appeal: Colbert *et al.* U.S. Patent No. 2,676,117; a 1964 Heraeus catalog; an article by Schroder entitled "Large-Area Coating of Glass for Modification of its Transmittance", published in 39 Glastechnische Berichte 156–158 (1966); Small *et al.* U.S. Patent No. 4,015,558; an IBM Technical Disclosure Bulletin by Byrne *et al.* entitled "Continuous Parallel-Plate RF Sputtering System", Vol. 13, No. 4 (September 1970) 1034–35; a Leybold-Heraeus publication entitled "RF and DC Sputtering Plants Using the Diode Principle" (April 12, 1971); Hammond *et al.* U.S. Patent No. 3,584,847; and a document entitled "Contributions of Leybold-Heraeus to the Second International Electron Beam Seminar, June 26–29, 1972, Frankfurt, Germany."

There was extensive testimony at trial explaining the references and applying them to the claims. The jury was correctly instructed that

> If one prior art reference completely embodies the same process or product as any claim of the patent in suit, the process or product recited by that claim is said to be 'anticipated' by the prior art and the claim is therefore invalid under § 102 for want of novelty.

LOF raised no objection to this instruction.[1] From the jury's verdict of patent validity, it is presumed that the jury found that no prior art reference completely embodied the process or apparatus of the claims in suit. *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894, 221 USPQ 669, 673–74 (Fed.Cir.), *cert. denied,* ─── U.S. ───, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). We have reviewed the references and the evidence, and conclude that a reasonable jury could have found that none of the references anticipates the claimed inventions.

## B. Obviousness.

Both sides explained to the jury that a determination under 35 U.S.C. § 103 requires inquiries into the scope and content of the prior art, the level of ordinary skill in the art, and the differences between the claimed inventions and the prior art. Witnesses explained the references, and there was extensive testimony and argument relating to the factual inquiries pertinent to obviousness.

Concentrating on the eight references *ante*, LOF argues that the verdict was based on erroneous views as to which references constitute prior art. At trial Shatterproof had argued to the jury that those references directed toward sputter coating of silicon wafers for electronics uses were not "analogous" art. Shatterproof presented testimony that the problems associated with sputtering onto window glass were greatly different from those encountered in the electronics industry, and that large cathodes and vacuum chambers presented the inventors with major prob-

1. LOF is thus precluded from asserting error in the instruction on appeal from the denial of its motion for a new trial. Fed.R.Civ.P. 51.

lems not previously encountered. It was pointed out to the jury that while a pinhole on a silicon wafer could ruin one or two circuits which could be discarded, the remaining thousand or more circuits per wafer would be unaffected; but a single pinhole in a sheet of window glass would render the product unusable. There was testimony that, since the electronics industry used the metallic film as an electrical conductor, optical characteristics of reflection and transparency were not a relevant concern; and that the film on silicon wafers was at least twenty times the thickness of optical coatings.

■ The trial judge's instructions to the jury on the factual inquiry of which references were pertinent to a determination of obviousness included the following:

In addition, if you find that a field of art is analogous to the art with which the patents are concerned then you may consider that field as prior art. A field of art is analogous if one seeking the solution to a problem in one art would be likely to seek the solution by referring to the other art.

To decide whether prior art in an analogous field is pertinent, you should consider the problems confronting a person skilled in sputter coating architectural glass and decide whether such a person would have looked to art in other fields of endeavor to solve those problems.

It is a question of fact for the jury to decide whether another field of art is sufficiently analogous to the art with which each patent is concerned that a person with a problem in the latter field would look to the former field to adopt a solution to the problem devised there.

LOF objects that this instruction was erroneous, and caused the jury to ignore the references relating to coating of silicon wafers for electronics purposes. The instruction left to the jury the factual determination of analogous art, which was correctly defined in the charge. The jury was correctly advised to look first to the nature of the problem confronting the inventor. *Orthopedic Equipment Co. v. United*

*States*, 702 F.2d 1005, 1009, 217 USPQ 193, 196 (Fed.Cir.1983). If the reference is not within the field of the inventor's endeavor, one looks at whether the field of the reference is reasonably pertinent to the problem the inventor is trying to solve. *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1572, 200 USPQ 584, 588 (Fed. Cir.1984).

■ LOF asks on appeal that we review and give controlling weight as prior art to certain German documents relating to Leybold-Heraeus' operations. The record on these documents is thin, apparently because of the exclusion of a witness for violation of a sequestration order. The provenance, status as prior art, and weight to be given these documents was before the jury and the trial judge. We may not base a decision on evidence that was properly excluded at trial. Nothing in our recent decision in *Quaker City Gear Works v. Skil Corp.*, 747 F.2d 1446, 223 USPQ 1161 (Fed.Cir.1984), cited by LOF under Rule 16 of this court, is to the contrary.

The jury was presented with conflicting testimony with respect to the factual inquiries into the level of ordinary skill in the art and the differences between the claimed inventions and the prior art. LOF had pointed out to the jury many asserted similarities between the claimed inventions and the prior art; Shatterproof adduced evidence that the references fail to teach how to make a continuous, thin film having reflective properties, fail to teach glass orientation relative to the cathode, and are otherwise distinguished. Conflicting expert opinion was presented on these points, and also concerning whether the teachings found in various references could be combined.

■ LOF also assigns error to the failure of the judge to instruct the jury concerning "secondary considerations" of obviousness. LOF testified that the Shatterproof inventions were unsuccessful and unprofitable, while Shatterproof presented testimony that the technological approach taken by Shatterproof was "very revolutionary" and produced millions of dollars of

sales for itself as well as for LOF from operation of the Clinton Coater. The pertinence of each side's view of these considerations was explained at trial, and although we do not generalize to all cases, in this case we find no fatal flaw in the jury instructions on section 103. The lengthy written instructions represented a balanced approach, focusing the jury's attention on the controlling issues in the context of the evidence and facts of this case, and we do not consider the absence of a specific instruction on the "secondary considerations" to have been prejudicial to LOF, whose burden of proving invalidity could not have been affected by the jury's evaluation of evidence not necessary to its conclusion that the patent is valid.

In the face of conflicting evidence, testimony, expert opinion, and argument, the jury found each of the four Apparatus and four Method claims valid. As this court said in *Railroad Dynamics*, 727 F.2d at 1514, 220 USPQ at 937, "[t]hat there may have been trial evidence favorable to both sides ... is simply irrelevant." We do not determine whether a jury could have reached a different verdict, but whether there is substantial evidence for the verdict that it reached. *Lavender v. Kurn*, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946). Our review of the record shows that there was substantial evidence on which a reasonable jury could have found facts consistent with its conclusion of non-obviousness. We do not find reversible error in the court's denial of LOF's motion for judgment n.o.v. on this issue.

### C. The "On Sale" Bar.

LOF asserts that patentability is barred because the products of the patented Method and Apparatus were "on sale", within the terms of 35 U.S.C. § 102(b), more than one year before the applicable filing date of September 25, 1973. There were prior patent applications on file as early as September 8, 1970, and the jury was instructed concerning the various filings and their significance, including those issues relating to the effect of inventorship on the right to priority of earlier filings. Although Shatterproof continues to argue its entitlement to earlier filing dates, the evidence and argument were concentrated on a critical date of September 25, 1972, which is the date most favorable to LOF's position.

LOF raises two issues: first, that Shatterproof's offers of sale after its earliest filings but prior to September 25, 1972 were sufficient to incur the section 102(b) bar; and second, that even if these offers were insufficient, Shatterproof's activities in testing its process and apparatus prior to September 25, 1972 were sufficient to incur the bar.

The record shows that the research for Shatterproof on metal coating of glass started at Battelle in early 1969, that sputter coating became the technique of choice during 1970, and that by February 19, 1971 Shatterproof decided to proceed with sputter coating commercially and authorized Battelle to develop a manufacturing process and to start to design a manufacturing plant. While this development and design work was proceeding, by October 1971 Shatterproof began to solicit orders for architectural glass panels and other coated glass products; Shatterproof testified that architectural glass for construction projects is normally ordered months or years in advance. It is uncontroverted that orders were placed before September 25, 1972.

In soliciting orders during this early period, samples of sputter-coated glass were shown to potential customers; it was explained at trial that the samples were made by Battelle using the "bell jar" technique of the prior art. Although LOF now argues that the samples were too big to fit in a bell jar, LOF adduced no evidence that any samples were produced following the claims of the Method or Apparatus patents, or that the claimed method or apparatus was disclosed to potential customers.

In the summer of 1972 Shatterproof was completing construction and assembly of the manufacturing plant, and a few weeks before the critical date Shatterproof start-

ed to test the apparatus. The product of these first tests was described by Shatterproof's vice-president as "frightening", and by inventor Wan as "useless". Instead of the intended silvery transmissive reflective glass, the product was black, opaque, and contained pinholes. The unacceptability was not controverted, although LOF suggested to the jury that it was usable as a cocktail table top; Shatterproof said it was worth less after coating than before.

LOF argued that these tests closed the "on sale" circle which was opened with the solicitation and acceptance of orders, since most of the segments of the plant worked as intended; and that because the plant did work as intended, albeit after the critical date, the earlier tests were merely routine adjustments and therefore adequate to trigger the "on sale" bar. Shatterproof countered with testimony that the tests were not routine, that the technology was unproven, and that it was unknown at the time how long it would take for the plant to start up and operate. Shatterproof witnesses testified that production did not start until after September 25, 1972. LOF challenged the production dates and the supporting evidence, pointed out to the jury asserted gaps in the documentary evidence, and vigorously cross-examined the witnesses. LOF raised questions of credibility as well as interpretation of the evidence.

■ Although application of section 102(b) is a matter of law, there were several disputed questions of fact on which the legal conclusion rests. The trial judge presented the "on sale" issue to the jury with the following instructions:

Also, any completed machine or product actually produced by a new process which is placed "on sale" is a part of the prior art. A product and the method or machine for making the product are considered to be in "public use" or "on sale" if the completed product is commercially exploited in any way. An actual, consummated sale is not necessary; an offer for sale, a solicitation of orders, advertisements, or promotional activity are sufficient so long as it is of a completed invention that has been shown to be commercially useful for the purpose intended.

It is against public policy to allow an inventor to commercially exploit his invention before applying for a patent because this has the effect of extending the term of the patent as fixed by Congress.

You must determine whether the defendants have established by clear and convincing evidence that any such offers for sale were made more than one year prior to the effective filing date. If you find that such offers were made, then the burden shifts to Shatterproof to prove that the offers did not involve functional machines and processes. Even one offer for sale of a completed invention more than one year prior to the effective filing date of the patents in suit will render invalid the Apparatus and Method patents.

LOF assigns legal error to these instructions, and argues that the mere offer to sell is sufficient, whether or not "a completed invention ... has been shown to be commercially useful for the purpose intended", and whether or not "functional machines and processes" are involved. LOF also argues that the factual question of whether the Shatterproof machines and processes were functional before the critical date must be decided in LOF's favor.

■ The clear weight of authority is that a bare offer to sell does not ipso facto satisfy the "on sale" bar, and that the surrounding circumstances must be considered. In *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 221 USPQ 561 (Fed.Cir.1984) the bar was found where the offer to sell was accompanied by a "makeshift" model embodying all aspects of the patented product. In *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1151, 219 USPQ 13, 18 (Fed.Cir.1983), an offer to sell was accompanied by samples of the product made by the patented method; the court held that it did not matter that the product was not in mass production, where there was "crucial testimony that every step of

the claimed method was followed". In *In re Dybel*, 524 F.2d 1393, 1400, 187 USPQ 593, 598 (CCPA 1975), where as here a sales contract had been entered into before the critical date, the court held that "for an invention of the type involved here to be 'on sale,' it must be complete at least to such an extent that the purchaser knows how it will perform." As stated in *General Electric Co. v. United States*, 228 Ct.Cl. 192, 654 F.2d 55, 60 n. 8, 211 USPQ 867, 872 n. 8 (1981), the invention must have been "sufficiently tested to demonstrate that it will work for its intended purpose."

The district court explained to the jury, in the context of the specific situation before them, that the section 102 bar applies to "a completed invention that has been shown to be commercially useful for the purpose intended." The controversy concerning the timing and significance and completion of the test and start-up activities had been presented to trial judge and jury, in extensive and contested detail. The jury instruction focused attention on the factual question critical to this case, that is, whether the offers of sale involved "functional machines and processes". As observed in *Structural Rubber Products Co. v. Park Rubber Co.*, 749 F.2d 707, 723, 223 USPQ 1264, 1276 (Fed.Cir.1984), "the duty of a trial court in any jury trial is to give instructions which are meaningful, not in terms of some abstract case, but which can be understood and given effect by the jury once it resolves the issues of fact which are in dispute." The determination of when the Shatterproof apparatus and process first functioned for its intended purpose depended on an evaluation of the evidence and the testimony. LOF invites us to draw adverse inferences from certain evidence or its lack; indeed, we observe that the jury was similarly invited. It is not our province to reweigh the evidence, nor to decide facts which depend on credibility of witnesses.

■ Our review of the entire record shows that a reasonable jury could have found that the apparatus and method of the claims were not functional by Septem-ber 25, 1972, and that the "on sale" bar was not satisfied. We discern no error in the court's refusal to grant judgment n.o.v. on this point.

*D. Inventorship.*

LOF asserts error in the court's treatment of LOF's position that both patents are invalid or unenforceable for failure to name the correct inventors. LOF asserts that the named inventors did not themselves invent the substrate holder, the poppet valves, or the conveyor design, but that these contributions originated with Shatterproof engineers or with equipment manufacturers. LOF charges Shatterproof with inequitable conduct and patent unenforceability based on Shatterproof's failure to disclaim certain claims of the Apparatus patent after this challenge was raised. LOF also contends that the trial court erred in refusing to allow testimony or to charge the jury that 35 U.S.C. § 288, which provides for the recovery of costs upon a successful infringement action, does not apply to the Apparatus patent due to this asserted deceptive intent in the designation of inventorship.

There was extensive testimony and argument on this issue at trial. Shatterproof pointed out that the claims in suit recite no specific conveyor design; they recite only a "conveyor means". LOF asserted that the conveyor was designed, built, and installed by Shatterproof. Inventor Chambers testified to the effect that the basic system had been designed at Battelle before vendors were selected for various components of the design, that Shatterproof engineers had designed the conveyor from several alternatives provided by the named inventors and with their approval, and that the idea of using a substrate holder originated with the Battelle inventors.

As for the poppet valves, they are mentioned only in Apparatus patent claims 13 and 14, neither of which was asserted by Shatterproof nor brought into the case by LOF. LOF now argues that all claims were at issue by virtue of the complaint and answer, but LOF did not raise this

point in objection to the court's request for jury verdicts limited to four specified claims of each patent, nor apparently at the pretrial proceedings at which Shatterproof said that only four claims of each patent would be asserted.

■ The issue of inventorship of all the claims of both patents was pursued in examination of each of the named inventors and others. LOF argues that there are inconsistencies in the testimony. To the extent that conflicting viewpoints were presented, this was within the province of the jury. The trial court instructed the jury as follows:

You have heard defendants contend that others were involved in the invention of the claimed apparatus and method and that those others are not named in the patent applications as the inventors.... You must determine whether the named inventors were the actual and only inventors of the subject matter claimed in the apparatus and method patents. If not, you must find that the Shatterproof patents are invalid.

Although this instruction is an over-simplification of the law in that it does not recognize the possibility of correcting errors in inventorship, any error in this instruction was harmless to LOF's position.

■ Our review shows that there was substantial evidence on which a reasonable jury could have found that the inventors were correctly named. An inventor "may use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent." *Hobbs v. U.S. Atomic Energy Comm.*, 451 F.2d 849 at 864, 171 USPQ at 724 (5 Cir. 1971). Nor do we consider that it was incumbent upon Shatterproof to disclaim, during the course of the litigation, claims subject to this controverted inventorship challenge.

*E. Indefiniteness.*

■ LOF argues that the Method and Apparatus patent claims are indefinite and thus invalid for failure to comply with the second paragraph of 35 U.S.C. § 112, in that they do not recite the size of the glass sheets or the quantity or quality of the coating, and that the words "freely supporting" in the method claims are vague and indefinite.

There was testimony and expert opinion at trial on the question of whether the claims adequately defined the invention. The specifications of both patents state that the thickness of the coating is in the range of 50 to 400 angstroms, and that a thicker coating would impair the transmission of visible light and thinner coatings would not significantly reduce solar radiation transmittance. Concerning the size of the glass sheets, the specifications state that "the products of primary concern are architectural glass, vehicle windows, and oven windows...." LOF's assertions that the claims are vague and indefinite in the term "freely supported" was also controverted by reference to the specifications. The amount of detail required to be included in claims depends on the particular invention and the prior art, and is not to be viewed in the abstract but in conjunction with whether the specification is in compliance with the first paragraph of section 112: "If the claims, read in the light of the specifications, reasonably apprise those skilled in the art both of the utilization and scope of the invention, and if the language is as precise as the subject matter permits, the courts can demand no more." *Georgia-Pacific Corp. v. United States Plywood Corp.*, 258 F.2d 124, 136, 118 USPQ 122, 132 (2d Cir.), *cert. denied*, 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112, 119 USPQ 501 (1958). Compliance with the second paragraph of section 112 is generally a question of law, and we observe no failure of compliance on the record before us, and no basis on section 112 grounds for disturbing the jury's verdict.

*Infringement*

Shatterproof had asserted that the Process and Apparatus claims were infringed literally and by application of the doctrine of equivalents. LOF argues on appeal that the Clinton Coater lacks several of the

claimed elements or steps, and that its components are not equivalents of those in the Apparatus and Method Patents.

At trial, Shatterproof witnesses applied each element of each of its claims, or asserted equivalents, to corresponding elements in the Clinton Coater. With respect to Apparatus claim 11, for example, Shatterproof's expert witness Mr. Dority testified that he "saw the glass sheets entering continuously from one end and coming out the other end coated." Concerning element *a,* he stated that there was "a coating chamber right there with an entrance opening and an exit opening." The Clinton Coater utilized a frame with a series of raised rubber buttons on slats disposed along the length of the frame; both Mr. Naylor, an LOF employee in charge of the filming operation at Clinton, and Mr. Dority testified that the glass "just rests" on the frame of rubber buttons. Mr. Dority said that "the glass rested right on top of that frame in a horizontal position" and equated the term "platen", as described in claim element *b,* with LOF's series of spaced rubber buttons. Mr. Warren, LOF's manager of quality control, testified that the Clinton Coater utilized rollers to transport the frame. Dority equated these rollers with the conveyor means in element *c,* and stated that the rollers propelled the frame into the entrance chamber and out through the exit chamber. Mr. Warren testified that there were valves between each of the six principal chambers: entrance chamber, glow discharge chamber, initial buffer chamber, sputtering chamber, second buffer chamber, and exit chamber. Mr. Dority testified that he observed all of "the hydraulic cylinders moving to a closed position" with the exception of those surrounding the sputtering chamber. However, there was "no question in my mind the doors were opening and closing," fulfilling the function of element *d,* because he observed "the lights on the control panel and synchonizing them with the movement of the door." In reference to element *e,* LOF admitted in response to interrogatories "that the sputter chamber pressure in its Clinton apparatus is controlled and that

there is apparatus for the control of each pressure." Mr. Warren testified that LOF controlled the pressure in the coating chamber using vacuum pumps. For element *f,* Mr. Warren testified that the sputtering chamber contained a rectanglar cathode, and that a continuous film of the target material was applied to the top of the glass while the glass moved through the sputter chamber. Concerning element *g,* Mr. Csehi, a chief engineer for LOF, testified that at least one of the parameters that caused the exit door to open was the position of the frame, and that limit switches were used to detect the location of the frame at a particular time. Mr. Dority testified that he had personally viewed the limit switch arms stopping and starting the opening of the chamber doors in response to the movement of the frame. On cross-examination, Mr. Dority stated that it was not possible for something other than frame movement to make the doors open and close.

Similar testimony was adduced for all the claims at issue. The jury viewed detailed claim charts, as well as videotapes and drawings of the Clinton coating operation. It examined exhibits such as the actual frame used at the Clinton facility, and heard opposing experts expound conflicting opinions. LOF challenges the weight of the evidence, and directs our attention to the evidence for non-infringement. LOF's strongest assertions concern the sealing means, the platen, and the inert gas. These were the subject of conflicting testimony of expert witnesses. The lengthy jury instructions included the following:

The "claims" define, in words, the exact boundaries of the invention, and it is only the claims of a patent that can be infringed.... Before any of a defendant's processes or products can be said to infringe any claim of a patent, the process or product must come within that claim. That is, the combination of steps or elements that you find recited in the claim must also be found in that defendant's process or product before it can be said to infringe that claim. In this re-

gard, each claim must be separately considered since proof of infringement of any one claim is sufficient to establish infringement of the patent.... Infringement of a dependent claim cannot be found unless you also find that the claim upon which it is dependent is also infringed.

The doctrines of equivalents and prosecution history estoppel were explained to the jury:

In those cases where each and every step or element in a defendant's process or product does not come within the literal words of the claim, infringement of the patent may nevertheless be found if the defendant's process or product differs from the claim only because of steps or elements that perform substantially the same function in substantially the same way to produce substantially the same results as the steps or elements of the invention set forth in the claims.... You may determine equivalency from the expert testimony you have heard, from the documents which have been introduced into evidence, and from the disclosures of the prior art.

In applying that test, known as the doctrine of equivalents, the claims cannot be construed in a manner inconsistent with any limitations which were added during prosecution in the Patent and Trademark Office to render the claims patentable. Also, the plaintiff is prohibited from relying on the doctrine of equivalents if the defendant's process or product is like the prior art.

Both infringement and equivalence are questions of fact. We have reviewed whether substantial evidence supports the jury verdict of infringement. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir.1983). Viewing the evidence as a whole, we conclude that a reasonable jury could have found the claims of both patents infringed, either literally or under the doctrine of equivalents, by LOF's Clinton Coater. We do not find reversible error in the court's denial of LOF's motions for judgment n.o.v. or a new trial on this issue.

## Inequitable Conduct

■ LOF asserts that the Method and Apparatus patents are unenforceable because Shatterproof misrepresented the state of the art and failed to make material disclosures to the PTO with regard to the existence of the Colbert *et al.* and LH Sputter Plant II references. LOF contends that Shatterproof had knowledge of these references prior to and during the prosecution of the applications for the patents in suit, and that failure to disclose their existence was intentional. The jury heard evidence on this issue. LOF's own expert Mr. Manning testified on cross-examination that the Colbert patent was not the best prior art. There was conflicting testimony about the LH Sputter Plant II. The jury was correctly charged as to the law on enforceability, fraud, and misrepresentation, and that clear and convincing evidence was needed for a finding of intentional misrepresentation or withholding of a material fact from the PTO. We find substantial basis in the record for a reasonable jury to have found the patents not unenforceable on this basis.

## LOF's Motion for a New Trial

■ LOF appeals from the district court's denial of its motions to set aside the verdict and grant a new trial, and asserts that the court erred in charging the jury, as well as in excluding evidence and issues. If prejudicial error occurred, or if the verdict is against the clear weight of the evidence, as an alternative to judgment n.o.v. a new trial may be granted, in the discretion of the trial judge. On review, we determine whether that discretion has been abused. *Fairmont Glass Works v. Cub Ford Coal Co.*, 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439 (1933).

■ In reviewing the court's denial of new trial, we review the jury instructions as a whole to determine whether clear error occurred, such that the jury was misled. *Railroad Dynamics*, 727 F.2d at 1512, 1517, 220 USPQ 929 at 934, 939 (Fed.

Cir.1984). *See* Fed.R.Civ.P. 61. LOF challenges the correctness of the instructions on obviousness, duties of candor and disclosure, reduction to practice, claim indefiniteness, LH publications as prior art, prior knowledge as prior art, and definition of the relevant art field. Most of these instructions have been discussed *ante,* and we discern no fundamental error in their substance, nor any abuse of the trial court's discretion in its management of this complex trial.

LOF also maintains that it was error for the trial court to decline to present special interrogatories to the jury on certain factual inquiries. As this court stated in *Structural Rubber Products Co.,* 749 F.2d at 720, 223 USPQ at 1274:

> [I]t must be left to the sound discretion of the trial court what form of verdict to request of a jury. *Weinar v. Rollform, Inc.* [744 F.2d 797, 809], Nos. 84-515/526, slip op. at 35 (Fed.Cir. Sept. 17, 1984). Thus, we have held that a trial court may, with proper instructions, present a patent case to a jury for a general verdict encompassing all of the issues of validity and infringement, *Railroad Dynamics,* 727 F.2d at 1514-15, 220 USPQ at 937-38, or may ask for a general answer on one or more specific legal issues, such as obviousness, a practice not specifically provided for in the Federal Rules. *Id.* at 1516, 220 USPQ at 938-39.

We do not find prejudicial error in the instructions, nor do we find sufficient basis for overturning the decision or retrying the case.

 LOF contends that pretrial procedures uncovered "intimations" of a grudge on Shatterproof's part against LOF, and that the exclusion of this alleged impeachment evidence was prejudicial error, supporting a new trial. Error may not be predicated on a ruling which excludes evidence unless a substantial right of the party is affected, and LOF has not so demonstrated. We find no abuse of the trial court's discretion in excluding this evidence.

LOF also asserts that the court's management of discovery was to LOF's detriment. Shatterproof had taken the position that certain documents were nondiscoverable; the trial judge, after *in camera* inspection, ordered Shatterproof to produce several documents, but found others to be duplicates or protected from discovery by the attorney-client privilege or work product exemption. LOF maintains that its motion to compel production of documents demonstrated a *prima facie* case of inequitable conduct before the PTO, which vitiates Shatterproof's attorney-client privilege and work product exemption. The trial judge made no such finding, and LOF has not persuaded us of a clear abuse of discretion in the trial judge's management of discovery. Fed.R.Civ.P. 26.

### The Coating Patent

 LOF asserts that the trial court erred in denying LOF''s summary judgment motion on U.S. Patent No. 3,826,728, the Coating patent, and in refusing LOF''s request for attorneys' fees since the Coating patent count was dismissed with prejudice on Shatterproof's motion. We see no abuse of discretion in this action, *W.L. Gore & Associates, Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1559, 220 USPQ 303, 317 (Fed.Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984), particularly since the record shows that the Coating patent was added to this action by stipulation and was dismissed with LOF's consent.

LOF argues further that the Method and Apparatus patents are invalid because the Coating patent was procured through inequitable conduct, and argues other demerits of the Coating patent. But these issues were not before the jury, nor did LOF request jury instructions concerning the Coating patent. LOF waived its opportunity to litigate the Coating patent in this trial when it stipulated, without reservation, to the dismissal order.

### Damages

 LOF contends that the jury's award of damages was speculative and un-

supported by substantial evidence. LOF points out that Shatterproof's witness Cusick testified that four percent of "net" sales would be a reasonable royalty rate, whereas the amount requested by Shatterproof and awarded by the jury ($2,826,743) was five percent of LOF's gross sales. Shatterproof contends that the award was indeed reasonable, observing that Mr. Cusick testified that "about four percent of total sales" would be reasonable if accompanied by an additional down payment of $300,000 to $400,000.

The instructions to the jury on damages were lengthy, and referred to the provision of 35 U.S.C. § 285 that a patent owner is entitled to no less than a reasonable royalty. LOF did not and does not object to this principle, but does object that the measure of 5% of gross sales rather than 4% of net sales was not supported by evidence.

The court denied LOF's motions for judgment n.o.v. or a new trial on this point. We have reviewed the record as a whole, and conclude that the jury rendered a reasonable decision. As noted in *Weinar*, 744 F.2d at 808, 223 USPQ at 375, "[j]ury damage awards, unless the product of passion and prejudice, are not easily overturned or modified on appeal." The record before us does not support the conclusion that the jury's damage award was speculative or unreasonable, or unsupported by substantial evidence.

LOF also criticizes the court-ordered 5% royalty for the compulsory patent license for continuing operations. This royalty is based on sales, measured as defined in the order, and we do not find the amount of the royalty or its method of measurement to be clearly erroneous or an abuse of judicial discretion.

### Treble Damages and Attorney Fees

Shatterproof cross-appeals from the denial of its motion to treble the amount of damages awarded, pursuant to 35 U.S.C. § 284, and its motion to award attorney fees in accordance with 35 U.S.C. § 285. Jury trial on these issues had been waived. ▮▮▮▮ Shatterproof contends that the record conclusively established willful in-

fringement as a matter of law, based on LOF's admission that it was aware of both of the patents in suit prior to sale of any infringing product, and the admission that LOF did not seek the opinion of patent counsel before construction of the Clinton Coater. Shatterproof argues that LOF decided to risk. liability for infringement because of the projected high profit margin, and because Leybold-Heraeus assertedly agreed to hold Libby-Owens Ford "harmless" if charged with infringement. Shatterproof refers to *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 221 USPQ 1 (Fed.Cir.1984) which upheld the award of treble damages and attorney fees on a showing of willful infringement.

LOF responds that its awareness of the patents was only "technical", that its patent staff routinely monitors patent activity in all areas of glass technology, but that its key people on the Clinton Coater project were not aware of the patents until this litigation arose. LOF contends that it did not have actual notice of the Shatterproof patents, as required in *Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 219 USPQ 569 (Fed.Cir. 1983). LOF also challenges Shatterproof's characterization of the LH contract provision as a "hold harmless" undertaking.

Willfulness of infringement is a question of fact. The issue was comprehensively argued before the district court. The trial judge denied without opinion Shatterproof's motion to increase the damage award, and we do not have his detailed views on this question. The jurisprudence, however, uniformly requires clear and convincing evidence in support of increased damages. A record devoid of opinions of counsel and silent on LOF's reaction to the existence of the Shatterproof patents may indeed lead to negative inferences, and the case for willfulness was dependent on determinations of credibility and motivation which were placed in issue at trial, and which are the province of the trier of fact. While a finding of willful infringement is sufficient to support an award of increased damages, *see Underwater Devices*, 717 F.2d at 1390, 219 USPQ at 577, on the

record before us it was neither clear error nor an abuse of the trial court's discretion to deny Shatterproof's motion.

■ The district court also denied Shatterproof's motion under 35 U.S.C. § 285 for attorney fees. Shatterproof contends that misconduct by LOF during litigation justifies such an award. Indeed, each side has criticized the litigation tactics of the other. An award of attorney fees is discretionary with the court, *Hughes v. Novi American, Inc.*, 724 F.2d 122, 124, 220 USPQ 707, 709 (Fed.Cir.1984), and section 285 requires that such discretion be exercised only upon a finding of exceptional circumstances. *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 712–13, 218 USPQ 969, 975 (Fed. Cir.1983). Our review of the record supports the district court's exercise of judicial discretion.

### Conclusion

We have fully considered all the issues raised by LOF and by Shatterproof on appeal and cross-appeal, including those not here discussed. The decision of the district court is *affirmed* in every respect.

AFFIRMED.