64 F.3d 675
 35 U.S.P.Q.2d 1700
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
HILTON DAVIS CHEMICAL CO., Plaintiff-Appellee,
v.
WARNER-JENKINSON COMPANY, INC., Defendant-Appellant.
 No. 93-1088.
 United States Court of Appeals, Federal Circuit.
 Aug. 8, 1995.
 
 Before MAYER, Circuit Judge, COWEN, Senior Circuit Judge, and RADER, Circuit Judge.
 PER CURIAM.
 
 
 1
 Hilton Davis Chemical Co. sued Warner-Jenkinson Co., Inc. for infringement of U.S. Patent No. 4,560,746 (the '746 patent). The jury found that the '746 patent was not invalid and that Warner-Jenkinson infringed under the doctrine of equivalents. The trial court entered judgment on the jury verdict. Hilton Davis Chem. Co. v. Warner-Jenkinson Co., No. C-1-91-218 (S.D.Ohio June 22, 1992). Because the jury verdict that the '746 patent is not invalid is legally correct in light of the jury's underlying fact findings, which are supported by substantial evidence, this court affirms.
 
 DISCUSSION
 
 2
 After this panel heard oral argument in this case, the court decided to rehear the appeal en banc to consider the important infringement issues raised concerning the doctrine of equivalents. After rehearing the appeal and reaching its decision on the infringement issues, the court remanded the validity issues for consideration by this panel. This panel issues this validity opinion as a companion to the en banc infringement opinion also issued today. See Hilton Davis Chem. Co. v. Warner-Jenkinson Co., No. 93-1088 (Fed.Cir. Aug. 8, 1995) (en banc ). The facts are stated in the en banc opinion, familiarity with which the panel assumes.
 
 
 3
 The trial court submitted the issue of validity of the '746 patent to the jury. The jury found the patent nonobvious over the asserted prior art, not invalid for failure to name the correct inventors, and not invalid for failure to disclose the best mode. Warner-Jenkinson appeals the nonobviousness and inventorship findings.
 
 
 4
 Obviousness is a question of law based upon subsidiary fact questions, including (1) the scope and content of the prior art, (2) the differences between the prior art and the claimed invention, and (3) the level of ordinary skill in the art. Graham v. John Deere Co., 383 U.S. 1, 17 (1966). Obviousness also involves consideration of objective indicia of nonobviousness, which again are fact questions. See id. at 17-18; Texas Instruments Inc. v. United States Int'l Trade Comm'n, 988 F.2d 1165, 1178, 26 USPQ2d 1018, 1028 (Fed.Cir.1993). In this case, the trial court submitted obviousness to the jury without asking for answers to the subsidiary fact questions. This court must infer that the jury answered the questions in a way that supports its legal conclusion of nonobviousness. Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 621, 225 USPQ 634, 638 (Fed.Cir.), cert. dismissed, 474 U.S. 976 (1985). This court reviews the jury's inferred answers to the subsidiary fact questions for substantial evidence. Id.; see also Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1550, 220 USPQ 193, 199-200 (Fed.Cir.1983).
 
 
 5
 Warner-Jenkinson's first obviousness contention is that the '746 claims, properly construed, do not require skipping "salting out." Salting out is an expensive operation that involves adding salt to the reaction solution of a dye to crystallize the dye. The dye may then be filtered from the remaining solution substantially free of impurities.
 
 
 6
 The claim belies Warner-Jenkinson's claim construction. The claim states:
 
 
 7
 In a process for the purification of a dye selected from [a Markush group] as the products resulting, respectively, from [diazotization followed by coupling, or condensation followed by sulfonation, of five compounds], said dye being present in the resulting reaction mixtures, along with impurities, the improvement which comprises: subjecting an aqueous solution of the reaction mixture resulting from said coupling or said sulfonation to ultrafiltration through a membrane ... to thereby cause separation of said impurities from said dye.... (Emphasis added.)
 
 
 8
 Claim 1 thus subjects a solution of the reaction mixture to ultrafiltration--not a solution of the crystallized product of salting out of the reaction mixture. Claim 1 skips the salting out step.
 
 
 9
 The '746 specification describes a process that includes a salting out step, and the inventors amended claim 1 during prosecution to recite "subjecting" instead of "directly subjecting" the solution of the reaction mixture to ultrafiltration. The plain meaning of the claim language, however, excludes salting out. "The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms." White v. Dunbar, 119 U.S. 47, 52 (1886). The plain import of claim 1 is to exclude salting out.
 
 
 10
 To show obviousness, Warner-Jenkinson relied at trial on three prior art references: the Booth patent; Osmonics Bulletin No. 109 (the Osmonics Bulletin); and U.K. Patent No. 1,359,898 (the British patent). The Booth patent discloses an ultrafiltration process for purifying colorant solutions. However, the Booth patent describes colorants having greater molecular sizes than those purified in the '746 process. The Booth process also uses a pH higher than 9, preferably from 11 to 13, and pressures from 25 to 200 p.s.i.g., preferably 75 to 125 p.s.i.g. The Booth patent thus teaches higher pHs and lower pressures than those specified in the claims of the '746 patent. Finally, the Booth patent teaches salting out, which the inventors disclaimed to secure allowance of the '746 patent.
 
 
 11
 The Osmonics Bulletin discloses various membranes for ultrafiltration. The inventors discussed the Bulletin in the '746 patent specification. The Bulletin does not suggest the particular combination of membrane pore sizes, pHs, and pressures for purifying food dyes as claimed in the '746 patent. Moreover, Warner-Jenkinson's lack of success, and Hilton Davis' initial lack of success, in producing acceptable purification results using information from the Bulletin supports the jury's finding that the '746 method is nonobvious in view of the Bulletin.
 
 
 12
 The British patent discloses a process for removing salt from textile dyes to prevent separation during storage. That process removes residual salt from dyes after salting out. In contrast, the '746 process replaces salting out. One example in the British patent teaches starting with a solution where the dye cannot be salted out without great difficulty. Trial testimony, however, showed that the process in this example yielded a dye of unspecified purity, rather than a food dye of approximately 90% purity as claimed in the '746 patent. Also, Warner-Jenkinson presented no evidence that the prior art suggested the pore size and pressure ranges disclosed in the British patent would separate impurities from dye in the Hilton Davis process.
 
 
 13
 Warner-Jenkinson also asserts its unsuccessful 1982 test at Osmonics as prior art. Osmonics performed the test for Warner-Jenkinson under a secrecy agreement. Therefore, the test can only qualify as prior art under 35 U.S.C. Sec. 102(g) (1988). See W.L. Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1549-50, 220 USPQ 303, 309-10 (Fed.Cir.1983) (secret use is not prior art under 35 U.S.C. Sec. 102(a), (b) (1988)), cert. denied, 469 U.S. 851 (1984). Warner-Jenkinson's 1982 test, however, was not successful, showing that Warner-Jenkinson did not actually reduce the tested process to practice as required for section 102(g) prior art. Kimberly-Clark Corp. v. Johnson & Johnson, 745 F.2d 1437, 1444-45, 223 USPQ 603, 607 (Fed.Cir.1984). Moreover, Warner-Jenkinson's failure to use the process for three and one-half years indicates abandonment, suppression, or concealment--still another consideration disqualifying the process as section 102(g) prior art. See Lutzker v. Plet, 843 F.2d 1364, 1367-68, 6 USPQ2d 1370, 1371 (Fed.Cir.1988).
 
 
 14
 Objective considerations such as commercial success and failure of others also support finding nonobviousness. See Graham, 383 U.S. at 17-18. Dyes purified with the '746 process have enjoyed significant commercial success because of the reduced cost of the claimed method. Warner-Jenkinson's failure to successfully practice ultrafiltration at the time of Hilton Davis' conception in 1982 also suggests the nonobviousness of the '746 process.
 
 
 15
 The record shows differences between the prior art and the '746 process. The record also shows objective factors favoring nonobviousness. In short, the record contains substantial evidence supporting the findings the jury could have made to conclude that the '746 process was nonobvious over the cited prior art references. See Shatterproof, 758 F.2d at 621.
 
 
 16
 Because courts presume patents to correctly name the inventors, claims of improper inventorship are "subjected to the closest scrutiny." Amax Fly Ash Corp. v. United States, 514 F.2d 1041, 1047, 182 USPQ 210, 215 (Ct.Cl.1974) (quoting The Barbed Wire Patent, 143 U.S. 275, 285 (1892)). "Such defenses are highly technical; courts disfavor these defenses on the strength of the legal presumption that the inventors named in a patent are the true ones." General Motors Corp. v. Toyota Motor Co., 667 F.2d 504, 507, 212 USPQ 659, 662 (6th Cir.1981), cert. denied, 456 U.S. 937 (1982). Inventorship is a question of law, reviewed de novo on appeal, with "any facts found ... in reaching an inventorship holding ... reviewed for clear error" in an appeal from an interference proceeding, Sewall v. Walters, 21 F.3d 411, 415, 30 USPQ2d 1356, 1358 (Fed.Cir.1994), or for substantial evidence in an appeal from a jury verdict.
 
 
 17
 Warner-Jenkinson challenges the validity of the '746 patent on the ground that Drs. Cook and Rebhahn, the named inventors, derived the claimed ultrafiltration process from Osmonics. Derivation requires communication of "at least so much of the claimed invention as would have made it obvious to one of ordinary skill in the art." New England Braiding Co. v. A.W. Chesterton Co., 970 F.2d 878, 883, 23 USPQ2d 1622, 1626 (Fed.Cir.1992). Derivation is a question of fact. Price v. Symsek, 988 F.2d 1187, 1190, 26 USPQ2d 1031, 1033 (Fed.Cir.1993). When the jury returned its verdict that Cook and Rebhahn, not Osmonics employees, invented the claimed process, it necessarily found that Cook and Rebhahn did not derive the claimed invention from Osmonics. This court reviews that implied fact finding for substantial evidence: "To the extent that conflicting viewpoints were presented [on derivation], this was within the province of the jury." Shatterproof, 758 F.2d at 624.
 
 
 18
 Substantial evidence supports the jury's finding that no one at Osmonics communicated sufficient knowledge to Cook to make an inventive contribution. Gach was the Osmonics employee who assisted Cook in testing ultrafiltration. Although Gach attempted to take credit for the '746 process at trial, he testified that to protect the confidentiality of Osmonics' relationship with Warner-Jenkinson, he concealed from Cook his knowledge of food dye purification gained from his work with Warner-Jenkinson. Cook testified that he received no intimation that Gach had any experience with a process similar to Hilton Davis', and that he used trial-and-error to identify an effective process. Significantly, Gach evaded questioning about Cook's role in the testing process, stating that he "cannot recall" whether Cook made observations and analyzed results.
 
 
 19
 Substantial evidence thus supports finding that instead of deriving the '746 process from Gach, Cook only directed Gach to assist him with developing the process. Gach's assistance is not enough to invalidate the '746 patent. "An inventor 'may use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent.' " Shatterproof, 758 F.2d at 624 (quoting Hobbs v. United States Atomic Energy Comm'n, 451 F.2d 849, 864, 171 USPQ 713, 724 (5th Cir.1971)). The president of Osmonics testified, furthermore, that when Cook and Rebhahn obtained a patent on their invention, Osmonics chose not to pursue an inventorship claim. Moreover, during Gach's testimony, counsel for Warner-Jenkinson disclaimed offering Gach as an inventor.
 
 
 20
 In sum, there is substantial evidence that Cook did not derive the '746 process from Gach or anyone else at Osmonics. The '746 patent names the correct inventors.
 
 
 21
 The jury verdict that the '746 patent is not invalid is legally correct in light of the jury's underlying fact findings, which are supported by substantial evidence. Therefore, the judgment of the district court on validity is affirmed.