**WESTVACO CORPORATION,**
Plaintiff–Appellant,

v.

**INTERNATIONAL PAPER COMPANY,**
Defendant–Appellee.

No. 92–1205.

United States Court of Appeals,
Federal Circuit.

March 31, 1993.

Ford F. Farabow, Jr., Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued for plaintiff-appellant (with him on the brief were Allen M. Sokal, J. Michael Jakes and Mark W. Lauroesch Washington, DC and Francis J. Hone, Robert C. Scheinfeld, and Marta E. Delsignore, Brumbaugh, Graves, Donohue & Raymond, and Thomas R. Long, Richard L. Schmalz and Larry C. Hall, Westvaco Corp., New York City).

William F. Dudine, Jr., Darby & Darby, New York City, argued for defendant-appellee (with him on the brief were S. Peter Ludwig, Beverly B. Goodwin and Robert C. Sullivan, Jr. New York City and Walt Thomas Zielinski, Intern. Paper Corporate Research Center, of Tuxedo, NY).

Before MICHEL, PLAGER, and RADER, Circuit Judges.

MICHEL, Circuit Judge.

Westvaco Corporation brought suit in the United States District court for the Eastern District of Virginia against International Paper Company (IPC) for a declaratory judgment that IPC's Reissue Patent No. 33,376 is invalid and unenforceable, that Westvaco's product does not infringe the patent, and that Westvaco is entitled to intervening rights. IPC denied Westvaco's claims and counterclaimed for willful infringement.

After a bench trial, the district court held the patent not invalid, enforceable, and willfully infringed, and denied Westvaco's claim for intervening rights. The district court entered a permanent injunction and awarded treble damages based upon a six percent royalty on Westvaco's net sales, attorney fees, and costs to IPC. 23 USPQ2d 1401, 1417–26, 1991 WL 290676 (E.D.Va.1991). Westvaco appeals the district court's validity determination, willfulness finding, award of damages based on sales before the date of the reissue patent, and denial of intervening rights. Enforceability and infringement were not appealed. Nor was the six percent royalty.

Because the district court's finding of willfulness is clearly erroneous, we reverse the enhancement of damages based thereon. The awards of attorney fees and costs are vacated and these issues should be redetermined on remand since the court's rulings were likely influenced by its incorrect willfulness finding. Moreover, because the scope of the reissue claims is not identical to that of the original claims, the district court erred by awarding damages based partly on sales before the date of the reissue patent. We therefore reverse the damage award and remand for a determination of the amount of damages to which IPC is entitled, measured only from the date of the reissue patent. We affirm the district court in all other respects.

## I. BACKGROUND

### A. *The Claimed Invention*

Reissue Patent No. 33,376 ("the reissue patent" or "the '376 patent"), dated October 9, 1990, is a reissue of Patent No. 4,789,575 ("the original patent" or "the '575 patent"), which issued on December 6, 1988. Both the original patent and the reissue patent are directed to a paperboard container for liquids containing essential oils and flavors, such as citrus juices. The original patent included claims 1–14. All these claims were carried over into the reissue patent. In addition, the reissue patent amended claims 1, 5, and 10 of the original patent and added new claims 15–42. IPC alleged that Westvaco infringed claims 5, 6, 33, and 38 of the reissue patent.

Thus, the only claims IPC asserted which were part of both the reissue patent and the original patent were claims 5 and 6. Claim 6 depends from claim 5 and was not changed in the reissue patent. Because one of the issues in this appeal is whether original claim 5 is identical to reissue claim 5, the exact language of those claims must be examined. Claim 5 was amended as follows (underlining indicates additions and brackets indicate deletions):

A container for liquids containing essential oils and flavors, *said container having an interior and an exterior,* said container constructed from a laminate comprising:

(a) a paperboard substrate *with inner and outer surfaces, said inner surface being closer to the interior of the container than said outer surface;*

(b) a thin 0.8 mil thick outer layer of a heat-sealable low density polyethylene polymer [coated on] *exterior to* said outer surface of said paperboard substrate;

(c) [an inner] *a coextruded* thin tie layer and a 0.2 to 0.7 mil thick layer of a heat-sealable ethylene vinyl alcohol copolymer, [coextruded on] *interior to* said inner surface of said paperboard substrate; *said heat sealable ethylene vinyl alcohol copolymer layer being interior to said tie layer;* and

(d) a thin 0.7 mil thick *product contact* layer of a heat-sealable low density polyethylene polymer [coated on an outer surface of] *interior to* said [tie material-]ethylene vinyl alcohol copolymer layer whereby said laminate can be heat-sealed on conventional equipment at temperatures ranging from 250° F–500° F.

Thus, the primary change in the language of claim 5 is that the recitation that the layers are "coated on" or "coextruded on" one another has been changed to their being "interior to" and "exterior to" one another.

Reissue claims 33 and 38 are similar to reissue claim 5 but do not require a tie layer. The district court depicted the claimed structures as follows, moving from the outside surface to the inside surface:[1]

| Claim 5 | Claims 33 and 38 |
|---|---|
| LDPE | LDPE |
| Paperboard | Paperboard |
| Tie layer | EVOH |
| EVOH | LDPE |
| LDPE | |

### B. *The Accused Product*

Dr. Debora Massouda, a Westvaco employee, developed the accused product for Westvaco. The district court found that she began working on the product in 1987. On September 24, 1987, Dr. Massouda indicated in her lab notebook that she was conducting certain tests for the purpose of "possibly mak[ing] [IPC's] Tropicana structure."

In September 1988, before the issuance of the '575 patent, Dr. Massouda prepared an outline concerning her juice carton research, which included a heading entitled, "Remaining Challenges." Under that heading were separate listings; one of which was "reduce material costs." Next to that listing was a handwritten notation, "trying to duplicate IP[C] structure." By the time Westvaco was prepared to begin manufacturing the accused product, the '575 patent had issued. Thus, before marketing the product, Westvaco's in-house patent counsel, Mr. Hall, sought a legal opinion from outside patent counsel whether the '575 patent was valid, and whether Westvaco's product infringed the '575 patent.

Outside counsel responded with a draft opinion letter. Counsel indicated that it had studied the patent, the file history, the cited prior art, and additional prior art which Westvaco had sent it. With respect to validity, counsel concluded: "[W]hile we believe that a court considering this issue in litigation should hold the claims to be invalid over the prior art, there is a significant possibility that the court would reach a contrary conclusion." The draft opinion noted that on obviousness issues, "the outcome is necessarily uncertain," because the court inevitably relies on the persuasiveness of each side's experts. With respect to infringement, counsel concluded that the accused product "should not be held to infringe any of the IP patents."

Mr. Hall reviewed counsel's draft and marked it with comments and questions. For example, next to the statement that there is a "significant possibility that the court would reach a contrary conclusion," Mr. Hall queried in the margin: "What does significant mean—? 50–50, 60–40, less than 50%." In the margin next to the discussion of expert witnesses, Mr. Hall noted: "too negative, let's get something positive in!!" And in the accompanying text, Mr. Hall penned in a suggested amendment to the opinion letter, stating

---

1. "LDPE" stands for low-density polyethylene, and "EVOH" stands for ethylene vinyl alcohol.

that a reference entitled, "Plastics World," "could be argued to be an anticipation of the claims."

Outside counsel prepared a final opinion letter after receiving Mr. Hall's marked-up copy of the draft. The final opinion letter did not adopt Mr. Hall's suggestion that the letter say that the claims are anticipated. Instead, the letter unequivocally stated: "[N]one of the prior art references anticipates any of the claims in the '575 patent in view of the very specific requirements of those claims...." Apparently in response to the query regarding the meaning of "significant," the final opinion letter stated that it was "more likely than not" that the claims would be held invalid over the prior art. With respect to infringement, the letter remained unchanged. Relying on outside counsel's opinion, Westvaco concluded that it could lawfully market the accused product. In June 1989, it began to do so.

The district court described the accused structure as a laminate with the following layers, moving from the outside surface to the inside surface:

LDPE

Paperboard

LDPE

EVOH

Tie layer

LDPE

IPC never accused Westvaco of infringing the '575 patent.

### C. *The Reissue Patent*

On June 27, 1989, IPC filed an application to reissue the '575 patent. Based on that application, Reissue Patent No. 33,376 issued on October 9, 1990. Two days later, IPC sent Westvaco a cease and desist letter asserting that Westvaco was infringing the reissue patent. Westvaco again sought an opinion from its outside counsel. Outside counsel noted that the reissue patent "broadened the scope of the original patent claims and ... added further claims which are broader than those in the previous patent." Because of the changed nature of the claims, counsel reached a different conclusion as to both validity and infringement than it had reached regarding the original patent. In particular, counsel concluded that none of claims 1–32 "should be held infringed." With respect to claims 33–42, counsel stated that although the accused product "might be construed to fall within the scope of Claims 33–42 of the reissue patent," all of those claims should be invalidated in view of the "Plastics World" reference.

After reviewing outside counsel's opinion, Westvaco concluded that it could continue marketing the accused product. Relying on this opinion, Westvaco responded to IPC's cease and desist letter by seeking a declaratory judgment of invalidity, unenforceability, and noninfringement of the reissue patent.

### D. *The District Court's Opinion*

The district court found that the accused product infringed the claims both literally and under the doctrine of equivalents. The district court also found that Westvaco failed to establish any of its invalidity defenses by clear and convincing evidence.[2] With respect to anticipation, the court stated: "No single prior art reference was published before the date of invention of the IP[C] patent which disclosed every element of its invention. There was therefore no anticipation." With respect to obviousness, the court stated:

24. The prior art cited by Westvaco as rendering IP[C]'s claims invalid does not, considered as a whole, render IP[C]'s claims obvious.... Indeed, viewed as a whole, the prior art tends to teach away from the IP[C] structures.

25. There is ample objective indicia of non-obviousness....

---

**2.** Westvaco asserted invalidity defenses of anticipation, obviousness, nonenablement, indefinite-

ness, and new matter.

26. These factors include the industry's failure to design a non-foil container with comparable beneficial qualities, the commercial success of IP's EVOH products, and Westvaco's deliberate efforts to duplicate IP's invention.

(Citations omitted.)

With respect to Westvaco's defense of intervening rights under 35 U.S.C. § 252 (1988), the district court concluded:

41. The defense is inapplicable here because Westvaco's product infringes at least two claims of the reissue patent (5 and 6) which were not substantially different from claims of the original patent....

42. Assuming *arguendo* that Westvaco has made a prima facie case for application of intervening rights, the Court concludes it would be inequitable to allow Westvaco the benefit of such a defense under the factual circumstances described above.

The district court's conclusion that the defense is inapplicable was based on the court's findings of fact that:

Reissue patent claims 5–6 are not substantively changed from claims 5–6 of the original patent. The language of claim 6 is the same in each patent. Claim 5 of the reissue patent contains language which merely clarifies terms of the patent, or the precise placement of the material layers within the structure. These language changes are no more substantial than the purported language differences between claims 33 and 38 and the Westvaco structure.

The court also found that Westvaco's infringement was willful, and awarded treble damages, attorney fees, and costs. The court found a reasonable royalty to be six percent of net sales, and thus, awarded damages in the amount of eighteen percent of Westvaco's net sales. (The court did not limit damages to the sales Westvaco made after the date of the reissue patent.) After citing its earlier findings regarding the references to IPC's product in Dr. Massouda's notebook and outline, the court noted:

A finding of willfulness is not precluded by the fact that Westvaco sought validity and infringement opinions from competent outside counsel. *See Spindelfabrik Suessen–Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1084 n. 13 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1063 [108 S.Ct. 1022, 98 L.Ed.2d 987] (1988). Here, Westvaco engaged in deliberate and obvious attempts to copy successful IP products after IP patented the structures embodied by the products. Westvaco should not be insulated from increased damages and an attorney's fee award by its after-the-fact efforts to justify these actions by encouraging positive opinions from an initially uncertain outside counsel.

The court stated in one of its findings of fact:

Westvaco's EVOH operations stemmed directly from efforts to study and duplicate the successful efforts of IP, the industry leader in the field.... Westvaco continued its EVOH activities, even after equivocal patent infringement opinions from outside counsel. Its actions speak less of caution and good faith, than of efforts to justify blatant copying of patented IP technology.

(Citation omitted.)

E.  *Motion to Reopen the Record*

After trial but before the court issued its Memorandum Opinion, Westvaco filed a motion to supplement the record with documents relating to a patent application Dr. Massouda had filed with the U.S. Patent and Trademark Office (PTO). The patent application was directed to the accused product. In particular, Westvaco wanted to supplement the record with the Notice of Allowance that the PTO had just issued pertaining to that application.

The court denied the motion, stating:

Having carefully considered the motion, the Court finds that neither equity nor informed discretion compels the Court to grant Westvaco's request. It should be remembered that Westvaco is the plaintiff in this case. It chose the time and forum for this suit. The game was played on a level playing field and time

expired. Now Westvaco wants an extra inning. It will not be granted.

### F. *Appeal*

■ Westvaco appealed to this court. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(1) (1988). On appeal, Westvaco challenges the district court's award of damages for sales before the date of the reissue patent, denial of intervening rights, finding that infringement was willful, denial of the motion to supplement the record, and holding that the claims are not invalid.[3] We address the issues in the order they were raised by Westvaco, which, although unusual, reflects their decreasing closeness and priority.

## II. ANALYSIS

### A. *Damages*

Westvaco argues that IPC is not entitled to damages before the date of the reissue patent because the claims in the reissue patent are not identical to the claims of the original patent. The first paragraph of section 252 of title 35 provides:

> The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and *the reissued patent, to the extent that its claims are identical with the original patent,* shall constitute a continuation thereof and have effect continuously from the date of the original patent.

35 U.S.C. § 252 (1988) (emphasis added).

■ This court has determined that the term "identical" as used in section 252, "means, *at most,* 'without substantive change.'" *Seattle Box Co. v. Industrial Crating & Packing,* 731 F.2d 818, 827–28, 221 USPQ 568, 574 (Fed.Cir.1984) (emphasis in original). Moreover, the court has stated that "it is the scope of the claim that must be identical, not that the identical words must be used." *Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.,* 810 F.2d 1113, 1115, 1 USPQ2d 1563, 1565 (Fed.Cir. 1987). A determination of whether the scope of a reissue claim is identical with the scope of the original claim is a question of law, which we review de novo. *Tillotson, Ltd. v. Walbro Corp.,* 831 F.2d 1033, 1037, 4 USPQ2d 1450, 1452 (Fed.Cir.1987).

■ Westvaco argues that the scope of reissue claim 5 is significantly broader than that of original claim 5 because of the change in claim terminology. We agree. First, the original claim defined the layers of low density polyethylene polymer as being "coated on" the paperboard substrate and the tie material, and the ethylene vinyl alcohol copolymer as being "coextruded on" the paperboard substrate. The reissue claim does not include such limitations. The language of original claim 5 is limiting

**3.** Westvaco also argues on appeal that the district court lacked jurisdiction to rule on the validity of claims not asserted by IPC in its counterclaim for infringement, and therefore, that this court should vacate that portion of the judgment that held claims other than claims 5, 6, 33, and 38 not invalid. However, Westvaco brought this suit seeking a declaratory judgment that all of the reissue claims are invalid in response to IPC's general accusations of infringement in a cease-and-desist letter of unlimited scope. This letter was never withdrawn. Moreover, Westvaco admitted in its brief that at trial it also introduced evidence on the invalidity of the non-asserted claims. Thus, even as to these claims there clearly was a reasonable apprehension of suit and hence a true case or controversy. The district court, therefore, had jurisdiction over all of the claims. See *Jervis B. Webb Co. v. Southern Systems, Inc.,* 742 F.2d 1388, 1399–1400 n. 8, 222 USPQ 943, 950 n. 8 (Fed.Cir.1984) (stating that the case or controversy requirement is not implicated where a declaratory judgment complaint asserts "invalidity of all of a patentee's claims in response to general accusations of infringement by the patentee, e.g., general accusations of infringement in cease-and-desist letters"). *Cf. Tol–O–Matic, Inc. v. Proma Produkt–Und Marketing Gesellschaft m.b.H.,* 945 F.2d 1546, 1554–55, 20 USPQ2d 1332, 1339–40 (Fed.Cir.1991) (not allowing a declaration on validity of non-asserted claims because no evidence or argument was presented at trial as to those claims).

because it defines the type of structure which results from the coating and coextruding, *i.e.*, "coated" layers and a "coextruded" layer. Second, the reissue claim terms, "exterior to" and "interior to," broaden the claim so that it could encompass a laminate with layers disposed between those layers explicitly recited. The original claim is not so broad. *See id.*, 831 F.2d at 1037 n. 2, 4 USPQ2d at 1453 n. 2 ("A claim of a reissue application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent.") (citing *In re Self*, 671 F.2d 1344, 213 USPQ 1 (CCPA 1982); *In re Ruth*, 278 F.2d 729, 47 CCPA 1014, 126 USPQ 155 (1960)). Our conclusion applies with equal force to claim 6 since that claim is dependent on claim 5.

■ We also find it significant that IPC did not sue Westvaco for infringement of claims 5 and 6 of the original patent. A lawsuit based on original claims 5 and 6 would not have been subject to Westvaco's defense of intervening rights. IPC's failure to sue on those claims creates a strong inference that even IPC believed that the scope of the claims had changed. There is no other explanation in the record for IPC's failure to sue on the original claims.

Although claims cannot be "interpreted in a vacuum," *Slimfold*, 810 F.2d at 1116, 1 USPQ2d at 1566, and must be interpreted "in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information," *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1362–63, 21 USPQ2d 1276, 1280 (Fed.Cir.1991), nothing in the prior art, the prosecution history, or other claims in this reissue patent suggests that original claim 5 and reissue claim 5 must be construed as having the same scope.

■ Moreover, although it is true that claim changes which "merely clarify" language already in the claims cannot be construed as a substantive change, *Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970, 977, 1 USPQ2d 1202, 1207 (Fed.Cir.1986), the reissue claims in this case do not merely clarify the original claims as the district court found. Indeed, the district court's statement that "[c]laim 5 of the reissue patent contains language which merely clarifies terms of the patent, or *the precise placement of the material layers within the structure*" (emphasis added), suggests as much. To the extent the reissue claims change "the precise placement of the material layers within the structure," the claim cannot be construed as a *mere* clarification, but must be construed as changing the scope of the original claim. *Cf. Seattle Box*, 731 F.2d at 828, 221 USPQ at 575 (suggesting that "a matter of a mere clarification of language to make specific what was always implicit or inherent" is not a substantive change).

■ Thus, because the scope of IPC's reissue claim is broader than that of its original claim, the claims are not "without substantive change" and are not identical. *Cf. Slimfold*, 810 F.2d at 1116–17, 1 USPQ2d at 1566 (concluding that a claim change which merely provides antecedent basis for a claim term is not a substantive change). Accordingly, IPC is not entitled to damages before the date of its reissue patent. The district court's award of damages before the date of the reissue patent is reversed. The case is remanded to the district court for a determination of the amount of damages to which IPC is entitled for Westvaco's sale of the infringing product after the date of the reissue patent.

### B. *Intervening Rights*

■ Once a determination is made that the claims are not "identical" within the meaning of the first paragraph of section 252, the defense of intervening rights under the second paragraph of section 252 can be raised. *Kaufman*, 807 F.2d at 978, 1 USPQ2d at 1207. In light of Westvaco's case that reissue claim 5 is not identical to original claim 5, it asserts that we should remand to the district court for it to reconsider the application of intervening rights under the second paragraph of section 252.

The second paragraph of section 252 of title 35 provides:

No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or used as specified, or for the manufacture, use or sale *of which substantial preparation was made before the grant of the reissue,* and it may also provide for the continued practice of any process patented by the reissue, practice, or for the practice of which substantial preparation was made, prior to the grant of the reissue, *to the extent and under such terms as the court deems equitable* for the protection of investments made or business commenced before the grant of the reissue.

35 U.S.C. § 252 (emphasis added).

■ Westvaco argues that, because it spent more than one million dollars in developing the accused product, it made "substantial preparation," entitling it to intervening rights. Assuming arguendo that Westvaco met the statutory requirement of substantial preparation, such substantial preparation alone does not automatically vest Westvaco with intervening rights. The plain language of the second sentence of the second paragraph of section 252 indicates that the court still has discretion whether to award intervening rights. The court need only grant intervening rights "to the extent and under such terms as the court deems equitable." *Id.* Thus, we must review the court's denial of intervening rights under the abuse of discretion standard.

The district court concluded that even assuming that "Westvaco has made a prima facie case for application of intervening rights, the Court concludes it would be inequitable to allow Westvaco the benefit of such a defense under the factual circumstances described above." Westvaco has not shown, or indeed even alleged, that the court's denial of intervening rights in this case amounts to an abuse of discretion. Accordingly, we affirm the district court's denial of intervening rights.

## C. *Willfulness*

"[A] finding of willful infringement is a finding of fact, not a conclusion of law. As such, it is reviewable under the clearly erroneous standard." *Bott v. Four Star Corp.*, 807 F.2d 1567, 1572, 1 USPQ2d 1210, 1213 (Fed.Cir.1986) (citing *Ralston Purina Co. v. Far-Mar-Co., Inc.*, 772 F.2d 1570, 1577, 227 USPQ 177, 181 (Fed.Cir. 1985); *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389, 219 USPQ 569, 576 (Fed.Cir.1983)). Westvaco asserts that the district court's finding of willfulness is clearly erroneous because Westvaco relied in good faith on timely and competent opinions from its patent counsel and because Westvaco did not copy IPC's product but attempted to design around it. We agree.

■ In *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 829, 23 USPQ2d 1426, 1437 (Fed.Cir.), *reh'g in banc denied*, (1992), this court stated that "objective evidence" must be considered to determine whether a defendant was justified in relying on patent counsel's advice, *i.e.*, whether the patent counsel's opinion was competent. Opinion letters should be reviewed to determine whether they evidence an adequate foundation based on a review of all necessary facts or whether they are conclusory on their face. *Id.*, 970 F.2d at 829, 23 USPQ2d at 1437. "[C]ounsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944, 22 USPQ2d 1119, 1126 (Fed.Cir.1992). In considering the reasonableness of the accused infringer's reliance on an opinion of counsel, the opinion letter should be reviewed for its "overall tone, its

discussion of case law, its analysis of the particular facts and its reference to inequitable conduct." *Id.* at 945, 22 USPQ2d at 1126.

■ Counsel's opinions in this case are clearly competent and Westvaco was justified in relying on them. Each opinion letter begins with a statement that the opinion is based on a review of the file history of the patent, the prior art of record, and additional prior art. Thus, the opinions evidence an adequate foundation. Moreover, the opinions are not conclusory. The validity and infringement issues are analyzed in detail, including discussions of the prior art, the accused device, and the claim language. The claims are not discussed as a group but are separately analyzed.

■ IPC argues, nonetheless, that the opinions are incompetent because they do not include a separate discussion of infringement under the doctrine of equivalents. IPC relies on *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 11 USPQ2d 1321 (Fed.Cir.1989), *cert. denied*, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 747 (1990), to support its argument. IPC's reliance thereon is misplaced. In *Datascope*, the court concluded that the opinion letter relied on by the defendant was deficient for several reasons: The opinion letter said nothing about the validity of the patent, the opinion letter's reference to infringement was conclusory, the opinion letter did not discuss the question of infringement under the doctrine of equivalents, and the defendant's attorney did not even consider or review the prosecution history of the patent before it rendered its opinion. In sum, the conclusory nature of the opinion in *Datascope* made it defective. Thus, the lack of a doctrine of equivalents analysis was not critical or dispositive. In this case, the opinion letter contains enough other indicia of competence that the failure to discuss infringement under the doctrine of equivalents is not fatal. *See also Ortho Pharmaceutical*, 959 F.2d at 944–45, 22 USPQ2d at 1126 (rejecting the same argument that *Datascope* stands for the proposition that an opinion is defective unless it includes an analysis of infringement under the doctrine of equivalents).

■ We note that the district court's finding that the opinion letters were "equivocal" also does not require a finding of willfulness. In *Read*, this court stated:

An opinion of counsel, of course, need not unequivocally state that the client will not be held liable for infringement. An honest opinion is more likely to speak of probabilities than certainties. A good test that the advice given is genuine and not merely self-serving is whether the asserted defenses are backed up with viable proof during trial which raises substantial questions, as here.

970 F.2d at 829 n. 9, 23 USPQ2d at 1437 n. 9. Indeed, counsel's opinion letters in this case spoke in terms of probabilities. For example, the final version of the '575 opinion letter stated that "it was more likely than not" that the claims would be held invalid over the prior art.

The district court characterized Westvaco's request for an opinion from outside counsel as "after-the-fact efforts to justify [its] actions by encouraging positive opinions from an initially uncertain outside counsel." That statement is inaccurate for several reasons. First, Westvaco's efforts were not "after-the-fact." Westvaco sought advice of counsel before it originally began manufacturing the accused product in June 1989. As soon as Westvaco became aware of the reissue patent, Westvaco immediately requested updated advice from counsel. Second, counsel's draft opinion letter in no way indicates that the firm was "initially uncertain" about its conclusions. Rather, Westvaco's in-house counsel, Mr. Hall, is the individual who was initially uncertain, as his inquiries to counsel indicate. Third, although Westvaco's actions could be characterized as encouraging a positive opinion regarding anticipation of the claims, it must be remembered that counsel declined Westvaco's suggestion. Counsel concluded exactly contrary to Westvaco's suggestions: "[N]one of the prior art references anticipates any of the claims...." Indeed, that fact strongly

supports the independent, and therefore reliable, nature of counsel's opinion.

Finally, the district court clearly erred in finding that Westvaco copied IPC's products: "Westvaco engaged in deliberate and obvious attempts to copy successful IP[C] products after IP[C] patented the structures embodied by the products." Westvaco did not copy IPC's product, but instead attempted to design around IPC's product. Westvaco made specific structural changes to its product so that its product was not a copy of IPC's product. For example, as the district court found, Westvaco's product included a tie layer between the inner layer of low density polyethylene and the layer of ethylene vinyl alcohol. IPC's claims do not include such a tie layer. Westvaco's outside patent counsel deemed that change and others as adequate to avoid infringement. Although this attempt to design around IPC's product proved unsuccessful, as evidenced by the court's finding of infringement, Westvaco should not be found to have willfully infringed based on its attempt.

This case is factually similar to *Read* in this regard. Our court in *Read* stated:

> Certainly the [plaintiff's device] served as the starting point for [the accused infringer's] design efforts. And certainly the purpose of [the accused infringer's] efforts was to make a device which would compete with the [plaintiff's device]. However, the undisputed evidence of record shows that Portec made specific changes deemed adequate by counsel to avoid infringement of both of [plaintiff's] patents.

970 F.2d at 828, 23 USPQ2d at 1436.

"[D]esigning or inventing around patents to make new inventions is encouraged." *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538, 20 USPQ2d 1456, 1458 (Fed.Cir.1991).

> [K]eeping track of a competitor's products and designing new and possibly better or cheaper functional equivalents is the stuff of which competition is made and is supposed to benefit the consumer. One of the benefits of a patent system is its so-called "negative incentive" to "de-

sign around" a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace. It should not be discouraged by punitive damage awards except in cases where conduct is so obnoxious as clearly to call for them. The world of competition is full of "fair fights"....

*State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235–36, 224 USPQ 418, 424 (Fed.Cir.1985). Although Westvaco lost the fight in this case, the fight was fair.

Accordingly, the district court's finding of willfulness is clearly erroneous. We reverse the finding of willfulness and the enhancement of damages based thereon. *Compare Central Soya Co. v. George A. Hormel & Co.*, 723 F.2d 1573, 220 USPQ 490 (Fed.Cir.1983) (upholding finding of willfulness because defendant failed to follow procedures recommended by patent counsel to avoid infringement); *Bott*, 807 F.2d at 1572, 1 USPQ2d at 1213 (upholding finding of willful infringement where defendant knew of patent and failed to seek advice of outside counsel).

### D. *Motion to Supplement Record*

The district court's denial of Westvaco's motion to supplement the record must be reviewed under an abuse of discretion standard. *O.M.I. Corp. of Am. v. Kelsh Instrument Co.*, 279 F.2d 579, 585, 125 USPQ 560, 563 (4th Cir.1960). Because Westvaco has not overcome this extremely high standard of review, we affirm the district court's denial of the motion.

### E. *Validity*

The reissue patent in this case is entitled to a statutory presumption of validity. 35 U.S.C. § 282 (1988). At trial, Westvaco was required to prove that IPC's patent was invalid by clear and convincing evidence. *Alco Std. Corp. v. TVA*, 808 F.2d 1490, 1498, 1 USPQ2d 1337, 1342 (Fed. Cir.1986), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). The district court found that Westvaco failed to meet that burden.

On appeal, Westvaco argues that the district court improperly concluded that claim 33 is not anticipated and that claims 5, 6, 33, and 38 would not have been obvious. Anticipation is a question of fact. *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 619, 225 USPQ 634, 637 (Fed.Cir.), *cert. dismissed*, 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985). Accordingly, we review the district court's finding that the claim is not anticipated under a clearly erroneous standard. *Chester v. Miller*, 906 F.2d 1574, 1576, 15 USPQ2d 1333, 1335 (Fed.Cir.1990). Although the ultimate determination on obviousness is a question of law, that determination is based on underlying fact findings which we review for clear error. *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1393, 222 USPQ 943, 946 (Fed.Cir. 1984).

With respect to anticipation, Westvaco has done little more than baldly assert that "[t]he Plastics World article clearly discloses all of the limitations of claim 33." Such an assertion, without more, does not satisfy Westvaco's burden on appeal to show that the district court clearly erred in ruling it failed to prove anticipation by clear and convincing evidence.

With respect to obviousness, Westvaco argues that the claims would have been obvious in view of two prior art references, the "Plastics World" reference and U.S. Patent No. 4,513,036 awarded to Thompson, et al. Even assuming those references are properly combinable, in order to prevail, Westvaco still has to show in this case both (a) that the district court's conclusion that the cited art as a whole fails to render IPC's claims prima facie obvious is erroneous and (b) that the district court's finding of "great commercial success" is clearly erroneous. Westvaco failed to do so. Accordingly, we affirm as to validity.

### III. CONCLUSION

The district court erred in awarding damages based on Westvaco's sales prior to the date of the reissue patent because reissue claims 5 and 6 are not identical in scope to original claims 5 and 6. The district court clearly erred in finding that Westvaco's infringement was willful because Westvaco reasonably relied on timely and competent opinions of its outside counsel and attempted in good faith to design around IPC's product. Accordingly, the period of relevant sale must be restricted to the post-reissue period and enhanced damages may not be awarded. Although an award of attorney fees and costs might be supportable on this record, the bases relied on, particularly the incorrect finding of willfulness, were insufficient and hence these awards must be vacated. The case is therefore remanded for a redetermination of the amount of damages to which IPC is entitled as well as a redetermination as to attorney fees and costs. The district court is affirmed in all other respects.

*AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED–IN–PART and REMANDED.*

### COSTS

Each party shall bear its own costs.

George C. ARMITAGE, Alan P. King, Ronnie A. Lewis, Kerry B. Swiggum, Michael D. Sword, Eric Aikin, Brian C. Cornett, Charles August Franco, William J. Greaves, John E. Griffiths, Jr., Scott W. Haygood, William J. Hull, Richard C. Kohr, Jesse R. Lewis, Jr., Lisa K. Lyons, Terry F. Lyons, Mark D. Marr, D.J. Moore, Dale Wayne Polley, Ronald L. Porter, James David Stokes, Scott L. Thompson, Thomas P. Whalen, Olen S. Williams, Alfred W. Hill, Dennis R. Figgeroa, Nelson Rosado, Robert Marvin, Richard A. Adams, Sr., Melvin Allen, Sr., Robert S. Anderson, James E. Bates, Linwood T. Binford, Richard Bostic, Kenny R. Burger, Anthony L. Cash, Thomas Chandler, James C. Cole, Sr., Thomas E. Cole, Edward C. Costan-