82 F.3d 434
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Ralph C. WICKER d/b/a The Wicker Group and Secured Document
Systems, Inc., Plaintiffs-Appellants,
v.
The STANDARD REGISTER COMPANY, Defendant/Cross-Appellant.
 Nos. 95-1387, 95-1426.
 United States Court of Appeals, Federal Circuit.
 March 25, 1996.
 
 Before MAYER, MICHEL and BRYSON, Circuit Judges.
 MICHEL, Circuit Judge.
 
 
 1
 Ralph C. Wicker, d/b/a the Wicker Group, and Secured Document Systems, Inc. (collectively Wicker) appeal the June 1, 1995 order of the United States District Court for the Eastern District of Virigina, No. 94-1209-A, denying Wicker's motions in the alternative for Judgment as a Matter of Law (JMOL) and for a new trial. Wicker's motions followed the district court's April 12, 1995, entry of judgment based on the jury's verdict and answers to interrogatories submitted therewith. In this declaratory judgment action by Wicker, with counterclaims of infringement by Standard Register Company (Standard), the jury found: (a) that Wicker infringed claim 1 of Standard's United States Patent Nos. 4,227,720 (the '720 patent) and 4,310,180 (the '180 patent), (b) the patents had not been shown invalid for obviousness, best mode violation or incorrect inventorship, and (c) that infringement was willful, and awarded damages of $50,000 for infringement of both patents. Standard cross-appeals the district court's denial of its motion for attorney fees. Because Wicker has not shown reversible error, we affirm the judgment in Standard's favor; and because Standard has not shown clear error in the finding of non-exceptionality, we affirm on the cross-appeal as well.
 
 DISCUSSION
 
 2
 This appeal concerns technology used to defeat nefarious copying of documents on the new, high-resolution color copying machines. The technology combines two techniques used in the prior art to deter copying of documents: pantographs (such as wavy lines, repeated designs, etc.) and "big dot, little dot" technology (i.e., printing colored big dots that would easily reproduce and colored little dots that are too small to be resolved by the lens of a high resolution color copier so that they would not reproduce). Only claim 1 of each patent is at issue in this case.[1]
 
 I.
 
 3
 We reverse a district court's denial of a motion for JMOL after a jury verdict "only if the jury's factual findings, presumed or express, are not supported by substantial evidence or, if they are, that the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." Kearns v. Chrysler Corp., 32 F.3d 1541, 1547-48, 31 USPQ2d 1746, 1751 (Fed.Cir.1994). In reviewing a denial of a motion for a new trial, we decide whether the district court's determination that the jury's verdict is not against the weight of the evidence constitutes an abuse of discretion. Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 626-27, 225 USPQ 634, 643 (Fed.Cir.1985).
 
 II.
 
 4
 Wicker argues that we must read claim 1 of the '180 patent as calling for making a "final" document having a colored background by a particular sequence of steps. That is, claim 1 would be limited to a process by which a document rather than a master is made through an additive sequence of steps where the final step includes a color "camouflage" tone printed over the entire document after the first two tones have been printed thereon. Thus, according to Wicker, making documents according to Wicker's process cannot infringe because the camouflage portion is not printed, but rather consists of unprinted portions of the paper document, and because Wicker uses a process that prints all overlays or tones creating the document simultaneously rather than sequentially. Additionally, Wicker argues that its camouflage is not color and thus does not meet the color camouflage limitation of claim 1. Although we think it doubtful that, given the proper construction of claim 1 of the '180 patent, the jury's finding of infringement would be supported by substantial evidence, we conclude that, given the proper construction of claim 1 of the '720 patent, the jury's finding of infringement as to that patent is supported by substantial evidence. We may affirm on that basis alone because the jury returned a general verdict as to damages.[2] Thus, we discuss only the finding of infringement and the validity of the '720 patent.
 
 
 5
 Wicker argues that the district court's (and Standard's) construction of claim 1 of the '720 patent is incorrect because it requires that claim 1 refer to a printed document in the first two limitations and to a master in the third limitation requiring the camouflage overlay. The district court concluded that the jury correctly found that Wicker's copy-proof technology infringed Standard's patents, but did not expressly construe the claims in denying Wicker's motions for JMOL and for a new trial. On appeal we review the jury's implied claim construction de novo, considering the claims, specification, and prosecution history.[3] Markman v. Westview Instruments, Inc., 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.) (in banc), cert. granted, 116 S.Ct. 40 (1995). Expert testimony may also be considered. Id. We conclude that the terms "overlay" and "printed" do not necessarily limit what is claimed to a document created only by printing press and paper. Standard's expert testified that printing in an "overlay" fashion in the language of this art may refer to placing one film over another, not, as Wicker claims the expert testified, that claim 1 refers to a printed document in the first two limitations and then switches to a master in the third. Thus, the invention of claim 1 is broad enough to include the use of an "overlay" created on paper or one created on film in the darkroom.
 
 
 6
 Because the jury's verdict that Wicker's products infringed the '720 patent is supported by substantial evidence, and because we conclude that the district court did not abuse its discretion in denying Wicker's motion for a new trial, we affirm the general verdict on damages for infringement.
 
 III.
 
 7
 Although we review de novo the district court's ultimate conclusion of non-obviousness, we review the underlying factual findings in a jury trial under the substantial evidence standard. Westvaco Corp. v. International Paper Co., 991 F.2d 735, 745, 26 USPQ2d 1353, 1362 (Fed.Cir.1993).
 
 
 8
 Wicker argues that the prior art suggests the combination of pantographs and big dot/little dot technologies because pantographs, like the big dot/little dot technologies, are security features and because of their prevalence of use within the security industry (the record contains evidence that pantographs are used in 90% of all checks). Specifically, Wicker argues that all that was needed to prove obviousness was a showing of any motivation to combine the two technologies, even if that motivation was for a different purpose. Here, pantographs were sometimes used on checks but for an entirely different purpose: namely, to make it more difficult for a counterfeiter, not to copy, but to draw such a check. And Wicker does not refer us to anything in the record suggesting a motivation to combine the technologies. Because the jury returned a general verdict, we must presume that the jury resolved all underlying factual disputes, including motivation to combine, in Standard's favor. There was substantial evidence to support an implied finding of no motivation to combine.
 
 
 9
 Thus, because there was substantial, indeed strong, evidence of objective indicia of non-obviousness, such as the industry need, numerous licensees, commercial success due to the claimed features, failure of others to solve the problem, and copying of the invention, and no evidence of a motivation to combine, we affirm the judgment as to non-obviousness.
 
 IV.
 
 10
 We also find Wicker's arguments regarding best mode and inventorship unpersuasive. Wicker argues that the district court abused its discretion in denying a new trial because Wicker was prejudiced by interrogatories, nos. 11 and 18, both of which required the jury to find that the inventors "intentionally failed to disclose that best mode in the application" in order to find a best mode violation. Wicker timely objected to the wording of these interrogatories. The district court concluded, however, that because the best mode instruction given to the jury, unlike the interrogatory, contained no intent requirement,[4] the verdict was supported by substantial evidence under the correct law and not a miscarriage of justice. Because the district court did not abuse its discretion, and because the jury instruction itself is not a misstatement of the law, we affirm as to this challenge to validity. In light of the instruction, the jury would have understood "intentionally" to mean merely knowingly, not deceptively, as argued.
 
 
 11
 Wicker also argues that Standard's patents are invalid because Standard improperly named the inventors in the '180 and '720 patent applications. Even if proven, misjoinder or omission of inventors will not invalidate a patent-in-suit so long as the error was not based upon deceptive intent and is correctable. 35 U.S.C. § 256; Stark v. Advanced Magnetics, Inc., 29 F.3d 1570, 1573, 31 USPQ2d 1290, 1293 (Fed.Cir.1994). The district court concluded that there was substantial evidence in the record that Wicker had failed to demonstrate deceptive intent by Standard in naming the inventors by clear and convincing evidence. We agree and affirm as to inventorship.
 
 V.
 
 12
 In its cross-appeal, Standard argues that the district court abused its discretion in denying Standard's motion for attorney fees under 35 U.S.C. § 285 (1994), authorizing discretionary attorney fee awards in "exceptional" cases, because the jury found that Wicker's infringement was "willful." Specifically, Standard complains that the district court did not adequately explain why, given the finding of willfulness, the case was not "exceptional" within the section of the district court's opinion devoted to attorney fees.
 
 
 13
 Whether a case is "exceptional" in the terms of 35 U.S.C. § 285 is a factual finding by the court, subject to our review under the clearly erroneous standard. For a party to be eligible for attorney fees under the statute, the court must find the case "exceptional." Even if the case is found "exceptional," however, a trial court's decision not to award attorney fees is a matter of judicial discretion. S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir.1986). In S.C. Johnson & Son, this court also stated that ordinarily an express finding of willful infringement requires an explanation by the district court of why the case is not "exceptional" within the meaning of section 285. Accord Modine Mfg. Co. v. Allen Group, Inc., 917 F.2d 538, 543, 16 USPQ2d 1622, 1626 (Fed.Cir.1990), cert. denied, 500 U.S. 918 (1991). However, in Consolidated Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804, 814, 15 USPQ2d 1481, 1488-89 (Fed.Cir.1990), we explained that "[t]hough findings on 'exceptional case' and reasons underlying the discretionary action on fees are helpful to an appellate court, remand should not be a matter of rote in every case in which findings and reasons are not expressly set forth. An appellate court need not close its eyes to the record where, as in this case, there is a way clearly open to affirm the district court's action." Accord Carroll Touch, Inc. v. Electro Mechanical Sys., Inc., 15 F.3d 1573, 1584, 27 USPQ2d 1836, 1845 (Fed.Cir.1993). Thus, there is no requirement that a district court separately explain why a case is not "exceptional" where there is also willful infringement found in the case.
 
 
 14
 Thus, the district court did not abuse its discretion, as Standard asserts, merely because it did not explain why the case was not "exceptional" in light of the jury finding of willful infringement. The district court here expressly found that this was a close case. That it so found under its discussion of enhanced damages rather than attorney fees is irrelevant, and we discern no clear error in this finding or in the district court's procedure in determining the "exceptionality" of the case.
 
 
 15
 Standard also alleges that the court ignored litigation abuses by Wicker because it did not address Standard's argument regarding abuses in its opinion. Those circumstances, however, were raised by Standard and considered by the district court. In denying Standard attorney fees, the district court necessarily found that Standard did not establish that the case was exceptional in view of either proven willfulness or alleged litigation abuse. The district court was in the best position to judge the litigation conduct of the parties.
 
 
 16
 In view of the record as a whole, we conclude that the district court's finding that the case was not exceptional was not clearly erroneous. Nor was it procedurally defective. Accordingly, we need not and do not address the issue of discretion or Standard's arguments regarding the reasonableness of its fees.
 
 
 
 [1]
 Claim 1 of the '180 patent reads as follows:
 
 
 [1]
 A method of making copy-proof document which prevents exact duplication of said document by causing the copy of said document to indicate its lack of originality, said method comprising steps of:
 applying a first less than full tone background color image to the original document substrate in a form which denotes its invalidity, which first image is composed of dots of a size which are reproducible by a color copying machine such as a Xerox model 6500 or the like;
 next, applying a second less than full tone background color image to the original document substrate in those areas of the original document substrate not covered by said first image, which second image is composed of dots of a size which are not reproducible by said copying machine;
 finally, applying a third background color camouflage random image over the entire area of the original document substrate, which third camouflage random image substantially masks the invalidity form of the first color image on the original document and which is also not reproducible by said copying machine to thereby provide an original document in which any sign of invalidity is substantially invisible, but which sign of invalidity is noticeably reproduced upon any color copy of said original document.
 Claim 1 of the '720 patent reads as follows:
 
 
 [1]
 A document for deterring a nefarious reproduction thereof upon a color copier comprising:
 a substrate;
 a first less than full tone image printed in a certain area on said substrate;
 a colored background printed on the remaining areas of said substrate; and
 a second less than full tone camouflage image printed in an overlay fashion over said colored background and said first less than full tone image, wherein said first less than full tone image is substantially invisible to the human eye when viewed in conjunction with said second less than full time image and said background, but which said first less than full tone image is readily apparent upon reproduction of said document by said color copier.
 
 
 [2]
 The verdict returned by the jury indicated that Standard was entitled to damages in the amount of $50,000 but did not allocate the damages, patent by patent. The damages interrogatory read as follows: "If you answered 'yes' for question 1, 2, 4 or 5 do you find that Standard Register is entitled to damages in the amount of: ______." We are thus unable to determine whether any portion of the award was due to the finding of infringement of the '180 patent. Wicker, who failed to timely object to the form of this interrogatory, must bear the brunt of our disability
 
 
 [3]
 Although Wicker's counsel has conceded that he failed to object to the submission of the claim construction issue to the jury, we do not "defer to the jury's claim construction simply because the district court instructed the jury to interpret the claims" and Wicker did not object. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 975 n. 5, 34 USPQ2d 1321, 1326 n. 5 (Fed.Cir.) (in banc), cert. granted, 116 S.Ct. 40 (1995)
 
 
 [4]
 In relevant part, the jury instructions stated:
 Wicker and [Secured Document Systems] must prove by clear and convincing evidence that the inventor concealed his or her best mode from the public, i.e. that the disclosure actually made in the specification is inadequate to enable one skilled in the art to practice the contemplated best mode.
 In relevant part, the interrogatories read:
 Have Wicker and [Secured Document Systems] proven by clear and convincing evidence that the inventors knew of a best mode at the time they filed their application and intentionally failed to disclose that best mode in the application that resulted in the '180 [or '720] patent?